THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| PATRICE EWING, | ) | Case No. 2:14-CV-00526 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION |
| DOUBLETREE DTWC LLC<br>d/b/a Hilton Salt Lake City Center Hotel, | )<br>)<br>) | AND ORDER |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Plaintiff Patrice Ewing, a former long time house keeping employee of Defendant Hilton, claims that she has a disability due to a mental impairment, was qualified to do her job and Defendant Hilton discriminated against her because of her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § § 12101-12213. The Complaint appears to encompass three separate ADA disability discrimination claims: (1) discriminatory termination; (2) failure to accommodate; and (3) hostile work environment.

Hilton claims that it did not discriminate against Ewing and terminated her employment because of her substandard performance after numerous warnings and opportunities to improve. Hilton moves for summary judgment contending that there is no evidence to support Ewing's claims of discrimination.

## II.  SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.  The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  This burden has two distinct components:  an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party.  *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*.  If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.  *Celotex*, 477 U.S. 242.

## III.  DISCUSSION

### A.  Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the

---

[1] Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242.

hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

When there is no direct evidence of discrimination, the Court employs the familiar *McDonnell-Douglas* analytical framework.[2] *Smothers v. Solvay Chemicals, Inc.,* 740 F.3d 530, 538 (10th Cir. 2014).

> The *McDonnell-Douglas* framework involves three steps: (1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.

*Id.*

**1. Discriminatory Termination**

    **a. Hilton's lack of knowledge of alleged disability**

Hilton first asserts that Ewing must, as a threshold matter, establish that Hilton knew of her alleged disability in order to establish the elements of both her discriminatory termination and failure to accommodate claims. *See Bacon v. Great Plains Mfg.*, 958 F. Supp 523, 530 (D. Kan. 1997)(quoting *Thomas v. Gen. Motors Corp.*, 98 F.3d 1344 (7th Cir. 1996)("The courts have uniformly held that '[w]ithout notice of a disability, an employer cannot be liable for discrimination on the basis of his disability.'"). That, Hilton contends, Ewing cannot do, citing Ewing's deposition testimony that she never told anyone she was mentally disabled, or that she was a "slow learner", and that she "didn't seem different", Hilton contends that there is no evidence that it knew of Ewing's alleged mental disability.

---

[2] *See McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802-04 (1973).

Ewing does not dispute the necessity of notice as a requirement of liability, but asserts that her disability was obvious to Hilton.

Ewing's position that Hilton should have known of her alleged disability because it was obvious is unsupported by admissible evidence. The Declaration of Jesus Garcia, which Ewing offers to support the proposition that Mr. Garcia knew immediately that Ewing had cognitive issues which he characterized as an intellectual disability and that everyone at Hilton knew of her disability, is inadmissible. As Hilton notes, at the summary judgment stage, affidavits or declarations must "set out facts as would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Mr. Garcia's Declaration fails in this regard. He states the conclusion that "[e]verone at Hilton knew [Ewing] had these issues, including, the Human Resources and Housekeeping Departments", Garcia Decl. ¶ 7, but provides no facts to support that conclusory and speculative allegation. Moreover, there is no showing that Mr. Garcia is competent to testify as to Ewing's "cognitive issues, which [he] would characterize as an intellectual disability" or that she was "clinically depressed". *Id*. at ¶ ¶ 6,24. Mr. Garcia does not claim to be a medical expert or otherwise competent to opine on a medical issue. Similarly, his statement that "**after witnessing this**[3] for several weeks, [he] **mentioned it** to the Human Resources Director (Kathy Sargent)", *id.* ¶ 16 (emphasis added), does not establish that Hilton knew of any alleged disability. Garcia's Declaration that after witnessing "this" he mentioned "It" is not sufficiently specific as to what he mentioned to Ms. Sargent to establish that Hilton knew of any alleged disability. And as discussed

---

[3]Presumably undue pressure, constant scrutiny, unrealistic expectations, and failure to accommodate Ewing's disability as stated in ¶¶ 12,13.

above, there is no showing that he is competent to testify about Ewing's disability and his conclusory statements lack supporting factual support.

To the extent the Declaration with attachments, of Alaine Cottle, Ewing's sister, is offered in support of Hilton's knowledge of disability, or as support of any purported discrimination, it is rejected as inadmissible. Relevant portions are not wholly based on personal knowledge, it contains conclusory allegations without facts supporting those conclusions, and the portion most relevant to Hilton's knowledge of disability or alleged discriminatory acts is hearsay.[4] As for the email dated Oct. 3, 2010, purporting to be from Alaine Cottle to Ewing's supervisor, Samantha Nyman, in which Ms. Cottle refers to herself as an advocate for the disabled, Ms. Nyman denies having received the email, and states that the address on the email is not her email address.

Plaintiff also relies on testimony of Ewing's doctor, William Preston, to establish that her alleged disability was obvious to Hilton. Dr. Preston testified that Ewing "seemed a bit slow to me. I don't know how to put it.... But it took a long time to - for my office staff to get her ready to be seen, and our physical exam took longer than a typical one because she didn't always understand the questions." Mem. Opp'n at 10 citing Preston Dep.). However, Dr Preston, who never treated Ewing for any mental limitation, further testified that he does not recall when he first noticed any limitation, but he "[j]ust got the sense of [Ewing] being a little, just a little – take a little longer to get the information." Preston Dep. at 70. Importantly, Dr. Preston also testified that "by and large, ... she's not a lot different

---

[4]"Hearsay testimony cannot be considered because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995)(citations omitted).

than other people, other patients." *Id.* Ewing testified that she learns things slower than some people, but she never told her supervisors or human resources that she felt she learned things slower than some people.

The Court concludes that a reasonable jury could not conclude from that evidence that it was obvious to Plaintiff's supervisors at Hilton that she had a disability. Because Ewing has failed to produce sufficient admissible evidence for a rational fact-finder to conclude that Hilton knew of any disability, the Court agrees with Hilton that her claims of discriminatory termination, and failure to accommodate fail and Hilton is entitled to summary judgment as to those claims.

### b. discriminatory termination -- failure of prima facie case

Hilton also is entitled to summary judgment on Ewing's discriminatory termination claim for the additional reason that she has failed to establish the third element of a *prima facie* case of disability discriminatory termination. To prevail on her disability discrimination claim under the ADA, Ewing must show that she "(1) "[is] a disabled person as defined by the ADA: (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired: and (3) suffered discrimination by an employer or prospective employer because of that disability." *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 985 (10th Cir. 2012).

Skipping ahead to the third element of her prima facie case of discrimination, Ewing must show that Hilton terminated her "under circumstances which give rise to an inference that the termination was based on her disability." *Morgan v. Hilti, Inc.*, 108 F. 3d 1319, 1323 (10th Cir. 1997). She must present "some affirmative evidence that disability was a

determining factor in the employer's decision." *Id*. at 1323. And as discussed, Ewing has not presented any viable admissible evidence that her alleged disability was a determining factor in Hilton's decision to terminate her employment. Because Ewing has failed to establish that she was discriminated against by Hilton due to any disability, she has not established a *prima facie* case of discrimination and Hilton, for this additional reason, is entitled to summary judgment on her claim of discriminatory termination.

### c. discriminatory termination – no showing of pretext

As an alternative reason that it is entitled to summary judgment, Hilton further urges that even if Ewing were able to set forth a prima facie case of discriminatory termination, it is nonetheless entitled to summary judgment because Ewing has failed to establish that Hilton's legitimate non-discriminatory reason for termination of her employment was pretext for discrimination. The Court agrees.

Having provided a legitimate non-discriminatory reason for terminating Ewing, the burden shifts to Ewing to prove that Hilton's reasons for her termination were merely a pretext for discrimination. Ewing must "present some affirmative evidence that disability was a determining factor in [Hilton's] decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). However, Ewing has presented no admissible evidence from which a reasonable jury could find Hilton's reason for her termination was a pretext. As Hilton notes, Ewing testified that the proffered reason for her termination, poor performance, was true, and that she struggled with meeting expectations. Ewing's suggestion that she only began receiving poor performance reviews when Bastimamovic began supervising her, Opp'n at 5, as noted by Hilton, is contradicted by the record, see Reply at 7, and is not affirmative evidence that disability was a determining factor in Hilton's decision to terminate

her employment. And, although, Ewing argues that it "appears" she was singled out for discipline, she offers no viable admissible evidence that she was treated differently than other similarly-situated employees.

Plaintiff's reliance on the Declarations of Jesus Garcia and Alaine Cottle to show pretext is misplaced, as discussed previously, because those statements are inadmissible for purposes of Hilton's knowledge of any disability, or alleged incidents suggestive of discrimination based on that alleged disability.

Plaintiff also relies on the decision of the Department of Workforce Services unemployment hearing officer to suggest pretext. As Hilton notes, however, the unemployment hearing officer never made a finding that Ewing's termination was pretext for discrimination. The hearing officer, in assessing disqualification from benefits, simply determined that Ewing's conduct was not so serious that she needed to be discharged to avoid future harm to Hilton. "The purpose of an unemployment benefits hearing is to determine whether an employee is disqualified for unemployment benefits, not whether the employer engaged in misconduct." *Fugett v. Sec. Transp. Servs.*, No 14-2291-JAR, 2015 WL 7451173, *9 (D. Kan. Nov. 23, 2015). Moreover, "the procedures utilized in unemployment benefits hearings are not similar to court hearings – they are informal and the rules of evidence do not apply." *Id*.

Assuming, without deciding, that Ewing is able to establish a *prima facie* case of disability discrimination, Hilton is entitled to summary judgment on Ewing's discrimination termination claim, for the alternative reason, that her poor job performance is a legitimate nondiscriminatory reason for her discharge, and Ewing has produced no admissible evidence of pretext.

**2. Failure to Accommodate**

"Failing to reasonably accommodate an employee's disability is a type of discrimination. See 42 U.S.C. § 12112(b)(5)(A)." *Benavides v. City of Oklahoma City*, 508 Fed. Appx. 720, 724 (10th Cir. 2013). To establish a failure to accommodate claim, Ewing must show that (1) she is a qualified individual with a disability; (2) Hilton was aware of her disability; and (3) Hilton failed to accommodate reasonably the disability. *Allen v. SouthCrest Hosp.*, 455 Fed. Appx. 827, 830 n.2 (10th Cir. 2011). A request for accommodation is a necessary predicate for a failure to accommodate claim. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011)("before an employer's duty to provide reasonable accommodations – or even to participate in the 'intereactive process' – is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice"). The request for an accommodation "does not have to be in writing ... or formally invoke the magic words reasonable accommodation, it nonetheless must make clear that the employee wants assistance for ... her disability." *Id.* (internal citations & quotations marks omitted).

As noted earlier, Ewing has failed to produce viable admissible evidence that Hilton knew of her alleged disability. Because Ewing has failed to establish evidence of the second element of her *prima facie* case of failure to accommodate claim, Hilton is entitled to summary judgment on that claim.

Also fatal to Ewing's claim for failure to accommodate, is the absence of admissible evidence that she ever requested an accommodation for any disability. Ewing asserts that "[there were at least two requests for workplace accommodation that went ignored. The

9

first was Mr. Garcia's report of 'harassment' to the Human Resources Department.  The second was Plaintiff's counsel's letter of November 2, 2010." Opp' n at 49.

As previously discussed, however, Mr. Garcia's declaration is inadmissible evidence and cannot support the proposition that Ewing had a mental disability for which she would need an accommodation, or that Hilton was aware of any such request.. On its face the letter from Ewing's attorney does not reference an alleged disability and cannot be read as requesting an accommodation for any disability.[5]   And  Ewing herself admits that she never requested an accommodation for her alleged mental disability.

### 3. Hostile Work Environment

The Court agrees with Hilton that, even assuming Ewing has a mental disability for purposes of the ADA, there is no viable admissible evidence that any alleged harassing behavior had any relationship to her disability.  The Court also agrees with Hilton that the complained of conduct falls short of the extreme conduct that would significantly alter

---

[5]As Hilton notes:

> the letter simply sets forth Ewing's disagreement with discipline issued to her for poor performance and complains of conduct by Ewing's co-worker, Connie Wise.  Ewing has never alleged that the incident between her and Wise was related in any way to her alleged disability. Rather, Ewing testified that she threw gloves at Wise after becoming angry that Wise questioned her about her work.  (Pl.'s Dep. at 63-64) Finally, the letter complains of Hilton scheduling Ewing to work weekends but merely notes she is dependent on public transportation without explanation. (Docket Entry 36-7 at 2.)  Moreover, the implication that Ewing's weekend schedule was somehow new is false. Ewing worked weekends throughout her employment and that working weekends was not new. (Pl.'s Dep. at 71; Defs' Motion at 20, n. 10.)

 Reply at 8-9 n. 2.

Ewing's working conditions and that no employee would have perceived the conduct as severe or pervasive.

Ewing must provide evidence of conduct that as a matter of law, is objectively so severe and pervasive as to alter the terms and conditions of employment. *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1326-27 (10th Cir. 2004).[6]  And she must establish that the alleged harassment was disability based. *Aramburu v. Boeing Co.* 112 F.3d 1398, 1410 (10th Cir. 1997).

As Hilton notes, the evidence proffered by Ewing in support of her hostile work environment claim includes the following:

> (1)**Ewing's claims** that her supervisors would watch her constantly: (2) **Cottle's hearsay statement** that Ewing complained to her that Basimamovic compared her to Russell, an employee who is mentally challenged; (3**) Cottle's hearsay statement** that Ewing complained [that] her supervisors made remarks like "we need to inspect your work"; (4) **Cottle's hearsay statement** that Ewing complained to her that she felt like she could not take a lunch without being ridiculed and picked on for not completing her work; (5) **Cottle's hearsay statement** that Ewing complained to her that Basimamovic questioned her about being able to read the schedule; and (6) **Garcia's [conclusory] claim** that Ewing's supervisors put undue pressure on her and scrutinized her work, which Garcia conclusory labels as 'harassment' Pl.'s Opp. at 45-48.

Reply at 9-10 (emphasis added).

For reasons previously discussed, the Court concludes that the Declarations of Jesus Garcia and Alaine Cottle, which Ewing offers in support of her harassment claim,

---

[6]Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,*, 510 U.S. 17, 23 (1993).

are inadmissible as hearsay and/or conclusory allegations unsupported by fact. And Ewing's allegations regarding her supervisors watching her and closely scrutinizing her work are inadequate. *See, e.g., Brooks v. Grundamann*, 851 F. Supp. 2d 1, 6-7 (D.D.C. 2012), *aff'd*, 748 F.3d 1273 (D.C. Cir. 2014) (no reasonable jury could find a hostile work environment where supervisor gave plaintiff negative performance appraisals, criticized her, increased scrutiny of her work, raised his voice during meeting, slammed his hand on the table, angrily threw a notebook in her direction). Ewing also points to a few other alleged discriminatory incidents, *see e.g.* Opp'n at 29, that simply cannot objectively be viewed as so severe and pervasive as to alter the terms and conditions of her employment Moreover, she has offered no evidence that any of the incidents were disability based.

Ewing's proffered evidence in support of her hostile work environment claim fails and no reasonable jury could find that she has been subjected to a hostile work environment within the meaning of the ADA. Hilton, therefore, is entitled to summary judgment on that claim.

### IV. CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment (Doc. #33) is granted, and Plaintiff's Complaint is dismissed with prejudice.

IT IS SO ORDERED.

Dated this 24th day of February, 2016

BY THE COURT:

*/s/ David Sam*
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT